UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-CR-0202-CVE |
| ) | |
| ANIBAL MAURICIO MARTIN-ESCOBAR, ) | |
| a/k/a Mauricio Martin, ) | |
| KELSEY RENEE HARDIN, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Before the Court are defendant Martin-Escobar's (Dkt. # 27) and defendant Hardin's (Dkt. # 28) motions to dismiss, and plaintiff's response (Dkt. # 29). Defendants argue that the Oklahoma child abuse statute is unconstitutionally vague, and that the charges against them should be dismissed. Dkt. # 27, at 1; Dkt. # 28, at 1. Plaintiff responds that 1) "[t]he circumstances of this case do not permit a facial challenge to the Oklahoma child abuse statute"; and 2) "[t]he statutory language is sufficiently definite to allow a person of common intelligence and understanding to understand that the statute prohibits [defendants'] conduct[.]" Dkt. # 29, at 6, 14.

On July 5, 2022, a grand jury returned a single-count indictment charging defendants with child abuse in Indian country, in violation of 18 U.S.C. §§ 2, 13, 1151, 1152, and OKLA. STAT. tit. 21, § 843.5(A). Dkt. # 2. The single count of the indictment charges that

> [f]rom in or about April 2021 through in or about April 2022, within Indian [c]ountry in the Northern District of Oklahoma, the defendant, [Anibal Mauricio Martin-Escobar] a/k/a "Mauricio Martin," and Kelsey Renee Hardin, non-Indians, aiding and abetting each other, willfully and maliciously harmed and threatened harm, and failed to protect from harm and threatened harm, to the health, safety, or welfare of M.H., B.H., K.H., and P.H., Indian children under the age of eighteen known to the Grand Jury.

All in violation of Title 18, United States Code, Sections 1151, 1151, 13, and 2; Title 21, Oklahoma Statutes, Section 843.5(A).

Id.

### I.

The following general account of the facts is taken from defendants' motions to dismiss and plaintiff's response: on April 20, 2022, Martin-Escobar and Hardin were with Hardin's four daughters, ages two through eight, at their new home in Nowata, Oklahoma. Dkt. # 27, at 1; Dkt. # 29, at 3. Because the home was undergoing a renovation and did not have a bathroom, the four children were instructed to tell defendants when they needed to use the bathroom, and defendants would take them to a nearby convenience store. Dkt. # 27, at 1. While at the construction site, four-year-old M.H. had diarrhea, which soiled her clothes and shoes. Dkt. # 27, at 1; Dkt. # 29, at 3. Upon discovering that M.H. had soiled herself, Martin-Escobar struck M.H. on the back of her leg with the handle of a hammer. Dkt. # 27, at 1; Dkt. # 29, at 3; Dkt. # 28, at 3. This incident caused a bruise to form on M.H.'s leg, which her father, Dylan Hardin, noticed when he picked up M.H. from his ex-wife, defendant Hardin. Dkt. # 27, at 1; Dkt. # 29, at 1-2. Plaintiff alleges that Dylan called defendant Hardin "to ask her if she knew about M.H.'s bruise. Hardin initially stated that she was not always around to watch the daughters '24/7.' When Dylan asked if she knew Martin-Escobar hit M.H. with a hammer, Hardin replied she had 'nothing to say.'" Dkt. # 29, at 2. Two days later, Dylan Hardin filed a child abuse report with the Pryor Police Department. Dkt. # 29, at 2; Dkt. # 27, at 1.

Plaintiff alleges that, over the course of the ensuing investigation, B.H. was forensically interviewed and the other children "underwent child abuse pediatric evaluations." Dkt. # 29, at 2-3.

Plaintiff further alleges that, during her forensic interview, B.H. "reported [that] Martin-Escobar regularly punished her and her three sisters by striking them with his hands, belt, or a hammer . . . [and] Hardin would occasionally join in and hit them[.]" Id. at 3; Dkt. # 27, at 1; Dkt. # 28, at 2. Plaintiff states that, during the pediatric evaluation, "M.H. disclosed to the attending physician that Martin-Escobar was responsible for the bruises on her thigh and buttocks. Injuries on M.H. and K.H.'s bodies were photographed and documented." Dkt. # 29, at 3.

As part of the investigation, defendants were interviewed by Federal Bureau of Investigation (FBI) agents. Id. at 4. During his FBI interview, defendant Martin-Escobar "admitted to hitting M.H. with a hammer because he was angry at her for not using a restroom." Dkt. # 29, at 4; Dkt. # 27, at 1. Plaintiff alleges that during defendant Hardin's FBI interview, she "admitted to knowing about and failing to report the hammer incident." Dkt. # 29, at 4. Defendant Hardin states in her motion to dismiss that she "believes that if [M.H.] had behaved as described, physical discipline would be warranted; but that a hammer should never be used for discipline." Dkt. # 28, at 3.

The crime occurred in Indian country in the state of Oklahoma, and Oklahoma law provides the statutory basis for the criminal charges against defendant. Section 843.5(A) of Title 21 provides that "[a]ny person who shall willfully or maliciously engage in child abuse, as defined in this section, shall, upon conviction, be guilty of a felony punishable" by up to life imprisonment. The statute defines "child abuse," in pertinent part, as "the willful malicious harm or threatened harm or failure to protect from harm or threatened harm to the health, safety, or welfare of a child under eighteen (18) years of age by a person responsible for a child's health, safety, or welfare. OKLA. STAT. tit. 21, § 843.5(O)(1)(a).

## II.

A basic principle of due process is that a law is void for vagueness "if it does not clearly define its prohibitions." Doctor John's, Inc. v. City of Roy, 465 F.3d 1150, 1157 (10th Cir. 2006). A statute can be unconstitutionally vague on its face or as applied to the facts of a particular case, but "a court will consider a law's facial vagueness only if it threatens First Amendment interests or if the challenge is made before enforcement." United States v. Rodebaugh, 798 F.3d 1281, 1294 (10th Cir. 2015). Where a statute does not implicate defendants' First Amendment freedoms, "vagueness challenges . . . 'must be examined in the light of the facts of the case at hand.'" United States v. Wells, 38 F.4th 1246, 1258 (10th Cir. 2022) (quoting United States v. Mazurie, 419 U.S. 544, 550 (1975)).

When considering an as-applied challenge to a criminal statute, there are two independent reasons why a statute could be found unconstitutionally vague. First, a statute is impermissibly vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." Rodebaugh, 798 F.3d at 1295. Second, a statute can be unconstitutionally vague "if it authorizes or even encourages arbitrary and discriminatory enforcement." Id. A person whose conduct clearly falls within the scope of the challenged statute or who knows of the illegality of his activities may not contest the constitutionality of a statute on the ground of vagueness. Id. A statute is not unconstitutional merely because it uses language invoking a qualitative standard as applied to specific conduct, such as "substantial" or "unreasonable," because the "law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree." Johnson, 576 U.S. at 604.

### III.

Defendants Martin-Escobar and Hardin move to dismiss the indictment on the following grounds:

    *a.*    *Defendant Martin-Escobar's Motion to Dismiss (Dkt. # 27)*

Defendant Martin-Escobar argues that Oklahoma's child abuse statute is unconstitutionally vague on its face and as applied to his conduct. Dkt. # 27, at 9, 11. Specifically, defendant Martin-Escobar argues that the Oklahoma child abuse statute is facially vague because 1) "there is no qualification on the term harm, . . . [which] provides police and prosecutors with unfettered discretion to determine what conduct gets charged"; and 2) "Section 843.5(A)'s nearly limitless sentencing range is unconstitutional[.]" Id. at 9-11. Defendant Martin-Escobar argues in the alternative that the child abuse statute is unconstitutionally vague as applied to him "[b]ecause a person o[f] ordinary intelligence would not be able to determine whether the alleged conduct of [d]efendant ran afoul of Section 843.5(A)[.]" Id. at 11-12.

As a preliminary matter, the Court notes defendant Martin-Escobar's argument that the Tenth Circuit's standard for considering a law's facial vagueness, as articulated in Rodebaugh, 798 F.3d at 1294, is "no longer appropriate in light of modern Supreme Court precedent." Dkt. # 27, at 3-4. Namely, defendant Martin-Escobar cites to several cases, including Johnson v. United States, 576 U.S. 591 (2015), and United States v. Davis, 139 S. Ct. 2319 (2019), arguing that 1) "facial vagueness challenges are not limited to statutes implicating First Amendment liberties or to pre-enforcement challenges"; 2) "a statute may be found facially vague even when some conduct clearly falls within its scope"; and 3) "a statute need not be vague as applied to the challenger's conduct if the statute itself is facially vague." Dkt. # 27, at 8-9. The Court is not persuaded for a number of

reasons. First, as Justice Thomas notes in his dissent in Sessions v. Dimaya, 138 S. Ct. 1204, 1250 (2018) (Thomas, J., dissenting), the Supreme Court's precedents "recognize that, outside the First Amendment context, a challenger must prove that the statute is vague as applied to him . . . *Johnson* did not overrule these precedents." Second, the Tenth Circuit's opinion in Rodebaugh was published after Johnson, and the Tenth Circuit's recent opinion in United States v. Wells, 38 F.4th 1246, 1258 (10th Cir. 2022), restates the Rodebaugh rule that, where a statute "does not implicate First Amendment freedoms, vagueness challenges . . . 'must be examined in the light of the facts of the case at hand.'" In other words, the Tenth Circuit could have reevaluated its facial vagueness test in light of any alleged conflict with Johnson and its progeny, but its most recent relevant opinion (dated July 2022) reaffirms Rodebaugh's test. Accordingly, because the challenged Oklahoma statute does not implicate First Amendment rights and defendant Martin-Escobar did not raise a pre-enforcement challenge, the Court will analyze whether the Oklahoma child abuse statute is unconstitutional in light of the facts of this case.

    A criminal statute may be unconstitutionally vague if it 1) fails to put a person of ordinary intelligence on notice of what conduct it prohibits; or 2) authorizes or even encourages arbitrary or discriminatory enforcement. Defendant Martin-Escobar argues the first factor--that a person of ordinary intelligence would not be put on notice that defendant's conduct was proscribed by the child abuse statute. Section 843.5 defines "child abuse" as "the willful malicious harm or threatened harm or failure to protect from harm or threatened harm to the health, safety, or welfare of a child under eighteen (18) years of age by a person responsible for a child's health, safety, or welfare." According to the relevant facts stated in the pleadings, Martin-Escobar is the boyfriend of M.H.'s mother, and shares supervision responsibilities of defendant Hardin's four young children. The undisputed facts

also establish that after discovering that 4-year-old M.H. had soiled herself--while at a construction site with no bathroom--Martin-Escobar struck her with a hammer with enough force to leave a bruise.[1]  The Court finds that a person of ordinary intelligence would be on notice that Martin-Escobar's conduct, such as striking a child with a hammer with enough force to cause a bruise, is proscribed by Oklahoma's child abuse statute.  Therefore, the Court finds that defendant Martin-Escobar's motion to dismiss the indictment (Dkt. # 27) should be denied.

    b.     *Defendant Hardin's Motion to Dismiss the Indictment (Dkt. # 28)*

Similar to Martin-Escobar, defendant Hardin argues that Oklahoma's child abuse statute is "unconstitutionally vague, both facially and as applied." Dkt. # 28, at 3.  Specifically, defendant Hardin argues that 1) Oklahoma's child abuse statute is subject to a facial attack because the statute burdens the right of familial association, which is protected by the First and Fourteenth Amendment; 2) the child abuse statute does not pass strict scrutiny because it is not narrowly tailored and overly broad; and 3) the statute is impermissibly vague as applied because the statute does not define what constitutes harm, and Hardin was thus not put on notice that her action or inaction was proscribed conduct. Id. at 4, 7, 10.

With respect to defendant Hardin's facial attack arguments, any such argument is foreclosed unless she can show that a First Amendment freedom is implicated by the child abuse statute.  In other words, if the right of familial association is a First Amendment right, and the child abuse statute threatens First Amendment interests by burdening the right of familial association, then the

---

[1]    The Court notes that defendant Martin-Escobar further argues that, based on the facts of this case, his use of "reasonable force in disciplining the child cannot be considered abuse under the statute." Dkt. # 27, at 12.  The Court finds that whether defendant's conduct constitutes harm within the meaning of the child abuse statute is a question for the jury to decide.

7

statute may properly be subject to a facial vagueness attack. Defendant Hardin cites to several Supreme Court and Tenth Circuit cases in support of this argument, including Roberts v. United States Jaycees, 468 U.S. 609 (1984), and Trujillo v. Bd. of Cty. Comm'rs of Santa Fe Cty., 768 F.2d 1186 (10th Cir. 1985). However, the Tenth Circuit squarely addressed this question in Griffin v. Strong, 983 F.2d 1544 (10th Cir. 1993). There, the Tenth Circuit considered the nature of the right of familial association--and its constitutional sources--in light of Supreme Court, Tenth Circuit, and its sister circuits' precedents, including Roberts and Trujillo. Id. at 1546. Consequently, the Tenth Circuit held that "the familial right of association is properly based on the concept of liberty in the Fourteenth Amendment. . . . [Thus,] [t]he freedom of intimate association is a substantive due process right, as is its subset, the familial right of association." Id. at 1547. Accordingly, the Court finds that Oklahoma's child abuse statute does not implicate a First Amendment right based on the familial right of association, and the Court will examine whether the at-issue statute is unconstitutionally vague as applied to defendant Hardin's conduct.

      A person of ordinary intelligence would be on notice that defendant Hardin, as the mother of M.H., B.H., K.H., and P.H., is responsible for the children's health, safety, or welfare. Further, plaintiff alleges that Hardin admitted in her FBI interview that she knew of and failed to report the hammer incident. Moreover, in her motion to dismiss, Hardin concedes that she "believes that if [M.H.] had behaved as described, physical discipline would be warranted; but that a hammer should never be used for discipline." Dkt. # 28, at 3. Hardin's own statement in her motion to dismiss demonstrates that she was on notice that striking a child with a hammer is proscribed conduct; thus, a person of ordinary intelligence would be on notice that Hardin's action or inaction--at the very

least, with respect to the hammer incident--is also proscribed by the child abuse statute. Consequently, the Court finds that defendant Hardin's motion to dismiss should be denied.

**IT IS THEREFORE ORDERED** that defendant Martin-Escobar's (Dkt. # 27) and defendant Hardin's (Dkt. # 28) motions to dismiss are **denied** because Oklahoma's child abuse statute is not unconstitutionally vague as applied to defendants' respective conduct.

**DATED** this 22nd day of August, 2022.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE